## In re VASQUEZ

Docket No. 146811. Submitted January 12, 1993, at Detroit. Decided
    April 5, 1993, at 9:00 A.M.

The Department of Social Services petitioned the Wayne County
    Probate Court, Juvenile Division, for an order terminating the
    parental rights of Sylvester and Aurora Vasquez in four of
    their minor children. The court, Frances Pitts, J., granted the
    order. Sylvester Vasquez appealed, asserting that he was enti-
    tled to be present at the disposition hearing, even though he
    was incarcerated at the time.

The Court of Appeals *held*:

1. An incarcerated parent is not entitled as a matter of
    absolute right to be present at the disposition hearing of a
    proceeding to terminate parental rights. Application of a three-
    part balancing test is required to determine whether a probate
    court is required to secure an incarcerated parent's presence at
    a termination hearing. The test balances the private interest at
    stake, the incremental risk of an erroneous deprivation of that
    right in the absence of the procedure demanded, and the
    government's interest in avoiding the burden of the procedure.

2. Sylvester Vasquez, who was incarcerated in Texas for an
    eight-year prison term for sexually abusing the oldest daughter
    involved in this petition, was not denied due process and equal
    protection when the probate court failed to secure his presence
    at the termination hearing. The risk of an erroneous depriva-
    tion of his parental rights was not increased by his absence, no
    prejudice resulted from his absence, and the result would not
    have been different had he been present. He was well repre-
    sented by counsel, and the administrative burden of bringing
    him to Michigan would have been great.

3. Testimony that the oldest daughter had told a therapist
    that she had been sexually abused by Sylvester Vasquez since
    she was three years old and testimony by a social worker that
    Vasquez had fractured the girl's arm and his son's skull and

REFERENCES

Am Jur 2d, Divorce and Separation § 982.

Necessity of requiring presence in court of both parties in proceed-
    ings relating to custody or visitation of children. 15 ALR4th 864.

had locked his twin daughters in a closet for twelve hours without food and water in an effort to conceal them from the petitioner was relevant, material, and properly admitted.

4. Clear and convincing evidence in support of the termination of Sylvester Vasquez' parental rights on the ground of desertion was not offered. However, there was clear and convincing evidence to support termination on the grounds of physical and sexual abuse, no reasonable likelihood that the conditions leading to the adjudication will be rectified within a reasonable time, failure to provide proper care and custody, Vazquez' incarceration, and the fact that the parental rights of both respondents had been terminated by a Texas court with regard to six of their older children because of his physical abuse of them and the mother's inability to protect them.

Affirmed.

1. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — HEARINGS — PRESENCE OF PARENT.

A parent does not have an absolute right to be physically present at a disposition hearing to terminate parental rights (MCL 712A.19[4][b]; MSA 27.3178[598.19][4][b]).

2. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — CONSTITUTIONAL LAW — DUE PROCESS — HEARINGS — PRESENCE OF PARENT — INCARCERATED PARENTS.

A three-part balancing test is used to determine whether a probate court must secure the physical presence of an incarcerated parent at a hearing to terminate parental rights; the factors to be balanced are: the private interest that will be affected by the official action; the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional procedural safeguards; and the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Larry W. Lewis,* Assistant Attorney General, for the Department of Social Services.

*Ilsa Draznin,* for the minor children.

*Ronald Giles,* for Sylvester Vasquez.

Before: Griffin, P.J., and Shepherd and Fitzgerald, JJ.

Shepherd, J. Respondent Sylvester Vasquez appeals as of right from an order of the Wayne County Probate Court terminating his parental rights[1] to four of his minor children pursuant to MCL 712A.19b(3)(a)(ii), (b)(i), (c)(i), (g), (h), and (i); MSA 27.3178(598.19b)(3)(a)(ii), (b)(i), (c)(i), (g), (h), and (i) (desertion, physical and sexual abuse, no reasonable likelihood that conditions leading to adjudication will be rectified within a reasonable time, failure to provide proper care and custody, imprisonment exceeding two years, parental rights to other siblings of the children terminated because of chronic neglect or abuse and the failure of prior rehabilitative attempts). We affirm.

Respondent argues that he was denied due process and equal protection when the probate court failed to secure his presence at the termination hearing. At the time of the hearing, respondent was incarcerated in Texas, serving an eight-year sentence for his plea-based conviction of second-degree sexual assault for sexually abusing the oldest daughter involved in this petition.

In *In re Brock,* 193 Mich App 652, 660-661; 485 NW2d 110 (1992), lv gtd 440 Mich 873 (1992), this Court noted that

> Michigan courts have accorded great respect for parental rights. This Court has determined that due process requirements "are much greater" in termination cases than in ordinary civil actions and that such requirements include the parent's right to be represented at the dispositional hearing. *In re Render,* 145 Mich App 344, 348-350; 377

---

[1] The parental rights of the mother of the children, Aurora Vasquez, were also terminated by the probate court, but she does not appeal the decision.

NW2d 421 (1985). In *Render*, we applied the balancing test set forth in *Matthews* [sic] v *Eldridge*, 424 US 319, 335; 96 S Ct 893; 47 L Ed 2d 18 (1976), and applied in the termination context in *Santosky v Kramer*, 455 US 745, 754-756; 102 S Ct 1388; 71 L Ed 2d 599 (1982). In particular, we balanced the private interest at stake, the incremental risk of an erroneous deprivation thereof in the absence of the procedure demanded, and the government's interest in avoiding the burden the procedure would carry. *Render, supra*, pp 348-349.

In *Render*, this Court decided that due process required the probate court to make efforts beyond mere notice to secure the presence of the incarcerated respondent at her termination hearing. In *Render*, the parent was in a county jail when she was served with notice of the hearing. The probate court failed to secure her presence at the hearing and directed the prosecutor to proceed with his proofs in her absence, even though the respondent's attorney claimed that he had only learned of her incarceration on the day of the trial. Applying the three-part balancing test set forth in *Mathews v Eldridge*, 424 US 319, 335; 96 S Ct 893; 47 L Ed 2d 18 (1976), this Court stated:

> As noted above, the respondent's interest in her parental rights is a compelling one. The risk of an erroneous deprivation is increased in the parent's absence. The Legislature has recognized this by requiring the parent's presence at the hearing. MCL 712A.19 [MSA 27.3178(598.19)]. Though respondent had an attorney at the dispositional hearing, it is impossible to determine whether she could have provided the attorney with information helpful to her defense. We are "not in a position to know whether in fact any prejudice resulted." *Florence* [v *Moors Concrete Products, Inc*, 35 Mich App 613, 621; 193 NW2d 72 (1971)]. It cannot be doubted that, in many parental rights termination

hearings, the presence of the very person whose rights the state aims to take away is of some "probable value" to the correctness of the result. *Mathews, supra.* The burden on the state is not a substantial one, at least not in the present case, where it appears the respondent was incarcerated in the county jail. [*Render, supra,* p 349.]

Contrary to respondent's contention, the case at bar is distinguishable from *Render* and does not involve a violation of respondent's right to due process. Although respondent's interest in his parental rights is a compelling one, the risk of an erroneous deprivation was not increased by his absence at the hearing. Unlike *Render,* where it was impossible to know whether the respondent could have provided information useful for her defense, we are convinced that respondent's presence at the side of his counsel would have changed nothing. Here, respondent was well represented by his counsel at the termination hearing, and thus no prejudice resulted from his absence. Further, we believe that the financial and administrative burden on the state in order to bring respondent from Texas to attend the hearing would have been far greater than in *Render,* where the parent was incarcerated in a county jail in Michigan.

Moreover, contrary to what *Render* seems to say, we do not believe that an incarcerated parent is entitled as a matter of absolute right to be present at the dispositional hearing of a proceeding to terminate parental rights. See *In re Montgomery,* 185 Mich App 341, 343; 460 NW2d 610 (1990), where this Court stated that a respondent is entitled to be present at the termination hearing.[2]

In light of present-day telecommunications,

---

[2] *Montgomery* predates Administrative Order No. 1990-6, 436 Mich lxxxiv, and thus we are not required to follow it.

other means that fall short of securing the physical presence of a parent are available to ensure that an incarcerated prisoner receives due process at a dispositional hearing. Had respondent wanted to provide evidence concerning his fitness and efforts to provide a fit home for his children, he could have been deposed by telephone or by videotape. Although respondent had the right to be deposed, he made no request. Even during the hearing, respondent's attorney could have conferred with his client by telephone concerning the progress of the case in order to allow respondent to assist his counsel in his defense. The availability of such means of communication militates against securing the physical presence of an incarcerated parent at a dispositional hearing as a matter of due process.

We note that since *Render,* the Legislature has amended MCL 712A.19; MSA 27.3178(598.19), which no longer requires that parents appear before the probate court at a dispositional hearing. MCL 712A.19(4)(b); MSA 27.3178(598.19)(4)(b) now only requires that parents be served with notice of the hearing. Further, pursuant to MCR 5.973(A)(3) (b), a parent has the right to be present at a termination hearing or may appear through legal counsel. The court rule does not require that the probate court secure the physical presence of a parent, but only implies that the probate court shall not deny a parent's right to be present at the hearing.

Because there is no absolute right to be physically present at the dispositional hearing of a proceeding to terminate parental rights in Michigan, respondent's equal protection argument under both the United States and Michigan Constitutions, US Const, Am XIV; Const 1963, art 1, § 2, also fails. There is no disparity in treatment be-

tween parents incarcerated in the state and those incarcerated outside the state because due process does not necessarily require a probate court to secure the presence of a parent incarcerated in the state at a termination hearing.

What due process requires is the application of the three-part balancing test set forth in *Mathews.* It is this test that determines whether a probate court has to secure the physical presence of an incarcerated parent at a termination hearing. Where, as in *Render,* the balancing test weighs in favor of the physical presence of an incarcerated parent at the hearing, the probate court must secure the parent's presence at the termination hearing. Where, as in this case, the balancing test weighs against the incarcerated parent, there is no such requirement. Thus, it is the *Mathews* balancing test that is critical in determining whether the probate court must secure the physical presence of an incarcerated parent at a termination hearing as a matter of due process. To hold otherwise would be to say that there is never a requirement of producing incarcerated parents at trial even if they are in a nearby jail and the court finds that their physical presence is essential either to assist counsel or to resolve crucial factual disputes.

Respondent next argues that the probate court abused its discretion in admitting the testimony of a social worker and a therapist regarding statements made by respondent's children describing acts of physical and sexual abuse by respondent. We disagree.

MCR 5.974(F)(2) provides:

> Evidence. At the hearing all relevant and material evidence, including oral and written reports, may be received by the court and may be relied upon to the extent of its probative value, even

though such evidence may not be admissible at trial. The respondent and the petitioner shall be afforded an opportunity to examine and controvert written reports so received and shall be allowed to cross-examine individuals who made the reports when those individuals are reasonably available.

With regard to the four children involved in this case, the therapist testified that the oldest daughter said that she had been sexually abused by respondent since she was three years old. There was also testimony by the social worker that respondent fractured the girl's arm when she was five years old, that he fractured his son's skull with a bat or a blunt object, and that he locked his twin daughters in a closet for approximately twelve hours without food and water in an effort to conceal them from the Department of Social Services. Testimony was given that the children are terrified of respondent and that they do not want to return to him. Even though this evidence was harmful to respondent, the probate court did not abuse its discretion because the testimony was relevant and material and was relied upon by the probate court to the extent of its probative value.

Respondent finally claims that the state failed to meet its burden of proving by clear and convincing evidence that termination of his parental rights was warranted under MCL 712A.19b; MSA 27.3178(598.19b). We disagree.

In an appeal from an order terminating parental rights, the findings of fact are reviewed for clear error. MCR 5.974(I); *In re Miller,* 433 Mich 331, 337; 445 NW2d 161 (1989); *In re McIntyre,* 192 Mich App 47, 52; 480 NW2d 293 (1991). A finding of fact is clearly erroneous if, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been made. *Miller, supra,* p 337. Once the

probate court finds at least one statutory ground for termination by clear and convincing evidence, the decision to terminate is discretionary, and the best interests of the children are considered. MCL 712A.19b(3); MSA 27.3178(598.19b)(3); *McIntyre, supra,* p 50.

Although there was not clear and convincing evidence to warrant termination of respondent's parental rights under MCL 712A.19b(3)(a)(ii); MSA 27.3178(598.19b)(3)(a)(ii) (desertion), clear and convincing evidence was presented to support termination of his parental rights under the other statutory grounds alleged. Termination was warranted under MCL 712A.19b(3)(b)(i), (c)(i), and (g); MSA 27.3178(598.19b)(3) (b)(i), (c)(i), and (g) (physical and sexual abuse, no reasonable likelihood that conditions leading to adjudication will be rectified within a reasonable time, and failure to provide proper care and custody), because there was clear and convincing evidence that respondent physically and sexually abused his children repeatedly and that there is a reasonable likelihood that he would abuse them again if they were returned to his custody. Termination was also warranted under subsection 3(h) (imprisonment exceeding two years), given that respondent was incarcerated in October 1989 for an eight-year prison term for sexually abusing the oldest daughter involved in this petition. Finally, the probate court also found by clear and convincing evidence that termination of respondent's parental rights was warranted under subsection 3(i) (parental rights to other siblings of the children terminated because of chronic neglect or abuse and the failure of prior rehabilitative attempts). This finding was based upon an order of a Texas court that had terminated respondent's and the mother's parental rights to six older children because of his physical

abuse of those children and her inability to protect them.

We therefore hold that the probate court did not abuse its discretion in terminating respondent's parental rights.

Affirmed.